UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ADAM W. GLOWKA, | : | Case No. 3:12-cv-345 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | Magistrate Judge Michael M. Merz |
| vs. | : | |
| | : | |
| GERALD H. BEMIS, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER (1) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(Doc. 50); AND
(2) GRANTING IN PART PLAINTIFF'S MOTION
TO OBJECT AND/OR STRIKE THE DEFENDANTS' AFFIDAVITS (Doc. 55)**

This civil action is before the Court on Defendants' Motion for Summary

Judgment (Doc. 50), Plaintiff's Motion to Object to and/or Strike the Defendants'

Affidavits (Doc. 55), and the parties' responsive memoranda (Docs. 53, 58).

## I.      STATEMENT OF THE CASE

Plaintiff Adam W. Glowka filed this action against Defendants Gerald H. Bemis

and Joesph P. Caito, III on October 15, 2012, alleging a claim under 42 U.S.C. § 1983 for

excessive force.[1]  Plaintiff previously proceeded with the assistance of *pro bono* counsel,

but now proceeds *pro se*.[2]  Defendants deny that they used excessive force and also assert

qualified immunity.

---

[1] Plaintiff's claims against a third defendant were previously dismissed.  (Doc. 15).

[2] The Court applies the principle that "*pro se* plaintiffs enjoy the benefit of a liberal construction
of their pleadings and filings."  *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999).

Defendants argue that they are entitled to judgment as a matter of law because Plaintiff failed to support the elements of his § 1983 claim and cannot overcome their assertion of qualified immunity.

## II.   UNDISPUTED FACTS

1.   Plaintiff Adam Glowka is an inmate at the McCreary U.S. Penitentiary in Pine Knot, Kentucky.  (Doc. 35).

2.   On December 31, 2011, Defendants Gerald Bemis and Joseph Caito, III were deputies with the Montgomery County Sheriff's Office in Montgomery County, Ohio.  (Doc. 50, Ex. A at ¶ 2, Ex. B at ¶ 2).

3.   At approximately 6:00 p.m. on December 31, 2011, Defendants Bemis and Caito went to the residence located at 101 Infirmary Road ("the residence") after receiving information from the resident, Angela Csaszar, that Plaintiff could be found there.  (*Id.*, Ex. C at ¶ 6).

4.   Plaintiff was wanted for questioning in connection with a prior theft of guns and other property belonging to the Montgomery County Sheriff's Office that had occurred only a few days before December 31, 2011.  (*Id.*, Ex. A at ¶ 5).

5.   Before entering the residence on December 31, 2011, the deputies obtained a written consent to search the residence from Csaszar.  (*Id.* at ¶ 7).

6.   Csaszar was herself arrested on outstanding warrants on December 31, 2011.  (*Id.* at ¶¶ 4, 9).

7.   After obtaining consent to search the residence, the sheriff deputies made several attempts, via their public announcement system, to convince Plaintiff to come out of the residence.  (*Id.*, Ex. B at ¶ 6).

8.   When Plaintiff failed to vacate the home, Defendant Caito and Sergeant Statzer attempted to open a door to the residence but failed to gain entry when the door slammed shut.  (*Id.* at ¶ 6).

9.   Defendants Bemis and Caito, working in connection with two other deputies and using the ballistic shield, were able to push open the front door, which had been barricaded by a recliner chair.  (*Id.*, Ex. A at ¶¶ 7-8, Ex. B at ¶ 7).

10. Immediately, the deputies identified themselves as working for the Sheriff's Office and ordered all persons inside the residence to make their presence known.  (*Id.*, Ex. A at ¶ 8, Ex. B at ¶ 7).

11. Shortly after entering the residence, the deputies heard a man's voice coming from a bedroom on the southeast corner of the house.  (*Id.*, Ex. A at ¶ 9, Ex. B at ¶ 7).

12. When deputies entered that bedroom, they discovered Plaintiff lying on a bed.  (*Id.*, Ex. A at ¶ 10).

13. Defendant Bemis pointed his duty weapon at Plaintiff and ordered Plaintiff to the floor.  (*Id.* at ¶ 10).

14. In response, Plaintiff slid off the bed and onto his stomach on the bedroom floor.  (*Id.*, Ex. B at ¶ 8).

15. Defendant Bemis grabbed Plaintiff's right arm, putting his hand behind his back for handcuffing.  (*Id.*, Ex. A at ¶ 11).

16. Defendant Bemis locked his knees around Plaintiff's head and used some additional amount of force before he handcuffed Plaintiff's left wrist.  (*Id.* at ¶ 12; Doc. 55, Ex. A at ¶ 35).

17. Defendant Bemis performed a quick pat down that revealed Plaintiff was unarmed and used some amount of force to get Plaintiff on his feet.  (Doc. 50, Ex. A at ¶ 13; Doc. 55, Ex. A at ¶ 38).

18. Defendant Bemis escorted Plaintiff out of the front door of the residence.  (Doc. 50, Ex. A at ¶ 16).

19. Plaintiff was then seated in the back of Deputy Bowling's patrol vehicle.  (*Id.* at ¶ 17).

20. Defendant Bemis could see that Plaintiff had a contusion on his lower lip and several pre-existing scabs that had ruptured during the handcuffing.  (*Id.*)

21. A Jefferson Township medic arrived at the scene.  (*Id.*)

22. Photographs of Plaintiff were taken because he alleged injury to his hands and face, and afterward, Plaintiff was transported to District 7 to be interviewed by detectives.  (*Id.* at ¶ 18).

23. Deputies Bemis and Caito completed the requisite use of force reports.  (*Id.*)

### III.    STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be construed in a light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . .  must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248 (1986).

### IV.    MOTION TO STRIKE

The Court first addresses Plaintiff's Motion to Object to and/or Strike the Defendants' Affidavits.  (Doc. 55).  Plaintiff urges the Court to strike or disregard the affidavits because they contain facts that are not properly supported, rely on police reports that were not attached to the affidavits, were made in bad faith, and contain inadmissible hearsay.

First, Plaintiff objects to all three affidavits on the basis they are nearly identical to the police reports prepared shortly after his arrest on December 31, 2011, but were not

attached to the affidavits.  In reliance on *Williams v. AMF, Inc.*, 512 F. Supp. 1048 (S.D. Ohio 1981), Plaintiff argues that this is grounds for striking the affidavits.[3]

Plaintiff's argument that the affidavits are not based on personal knowledge is not well taken because the affiants describe their own conduct and experiences.  Plaintiff also notes that the affidavits largely mirror the contents of the police report.  In essence, Plaintiff is invoking the distinction between present memory refreshed and the past recollection recorded hearsay exception to argue that the affiants lacked sufficient memory of the events and impermissibly use the affidavits to restate the contents of their prior unsworn statements.  *See Rush v. Ill. Cent. R. Co.*, 399 F.3d 705, 718-19 (6th Cir. 2005).  However, Plaintiff did submit the police reports as part of the record.  (Doc. 55, Ex. B at 3-8).[4]

The Court recognizes that the affidavits bear a striking resemblance to the police reports.  However, the Court need not fully address this issue because the Court concludes there is a genuine factual dispute precluding qualified immunity, even if the Defendants' affidavits are considered in their entirety.

Plaintiff raises several additional objections specific to the affidavit of Michael Williams, a deputy with the Montgomery County Sheriff's Office who is not a party to this action.  Plaintiff questions Williams' personal knowledge based on documents that

---

[3] The Court liberally construes Plaintiff's citations to Fed. R. Civ. P. 56(e), which previously set forth the requirements for affidavits, to refer to the current codification at Fed. R. Civ. P. 56(c)(4).

[4] Defendants did not object to any of the documents Plaintiff submitted and  have implicitly consented to their admissibility.  *Guzman v. Denny's Inc.*, 40 F. Supp. 2d 930, 935 n.3 (S.D. Ohio 1999).

allegedly contradict statements in Williams' affidavit, including documents referenced in the affidavit.  The police report listing Williams as the reporting officer includes Deputy V. Dingee's name and badge number at the end of the report.  (Doc. 55, Ex. B at 7-8). The written consent to search form that Williams stated he read to Csaszar bears the signature of Deputy V. Dingee as the witness.  (Doc. 50, Ex. C at ¶ 7; Doc. 55, Ex. F). Finally, Defendant Caito's affidavit provides that Deputy Bowling initially located Csaszar and that Deputy Dingee relayed the information that she consented to the search of the house.  (Doc. 50, Ex. B at ¶¶ 4, 6).  The discrepancies that Plaintiff identifies do not directly contradict Williams' affidavit nor do they provide a basis to conclude that the affidavit was submitted in bad faith.  Credibility is not a matter the Court can consider on summary judgment.  Moreover, the affidavit largely involves information not material to Plaintiff's claim of excessive force.

Plaintiff also contends that paragraph 8 contains inadmissible hearsay. [5]  In response, Defendants argue only that Williams' statement that Csaszar "continued to speak" is not hearsay because it does not attempt to convey what she said.  (Doc. 58 at 2). This is correct.  However, Defendants do not address the remainder of the paragraph, which does attempt to convey the content of Csaszar's statement.  Accordingly, paragraph 8 of the Williams affidavit contains inadmissible hearsay that the Court strikes from the record.  Plaintiff's motion to strike is otherwise denied.

---

[5] The paragraph reads:  "Angela Csaszar continued to speak about Glowka indicating that he had robbed two 'dope boys' in Englewood earlier that same day and had injured his hand while doing so."  (Doc. 50, Ex. C at ¶ 8).

## V.    ANALYSIS

In this § 1983 action, Plaintiff alleges that Defendants violated his Fourth Amendment rights by using excessive force during the course of his arrest.  Defendants argue that they are entitled to judgment as a matter of law because the undisputed facts do not amount to a constitutional violation and Plaintiff is unable to overcome their assertion of qualified immunity.

To state a claim under § 1983, Plaintiff must establish: (1) the deprivation of a right secured by the Constitution or laws of the United States; (2) caused by a person acting under the color of state law.  *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014).  Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "Qualified immunity is an immunity from suit rather than a mere defense to liability."  *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (internal quotation marks omitted).  The qualified immunity analysis entails a two-part test: "whether 'the facts alleged show the officer's conduct violated a constitutional right' and whether that right was 'clearly established.'"  *Robertson*, 753 F.3d at 615 (quoting *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)).  Once qualified immunity is asserted, "the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity."  *United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 478 (6th Cir. 2014).

Defendants do not dispute that they were acting under the color of state law and do not dispute that the right to be free from excessive force is a clearly established right. Instead, Defendants argue that their actions did not amount to a constitutional violation.[6]

The relevant inquiry on a Fourth Amendment excessive force claim is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989).  Factors relevant in determining whether the amount of force used was objectively reasonable are: "1) the severity of the crime at issue; 2) whether the suspect posed an immediate threat to the safety of the police officers or others; and 3) whether the suspect actively resisted arrest or attempted to evade arrest by flight." *Harris v. City of Circleville*, 583 F.3d 356, 365 (6th Cir. 2009).  The reasonableness of the force used must be judged from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.  The Court is mindful that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.*

To succeed on an excessive force claim, "a plaintiff need not demonstrate a physical injury." *Stricker v. Twp. of Cambridge*, 710 F.3d 350, 364 (6th Cir. 2013).  The

---

[6] Defendants' three-page reply brief does not address the countervailing evidence Plaintiff presented, particularly the version of events recounted in his affidavit.  Defendants merely state that they "stand on their argument regarding their entitlement to qualified immunity as a matter of law."  (Doc. 58 at 4).  Defendants do argue that Plaintiff failed to present evidence that he informed the Montgomery County Jail's medical staff that Defendants caused his injuries and that "[t]his fact tends to support the Defendants' contention that they did not use excessive force."  (*Id.*)  Notwithstanding the impact of this purported lack of evidence, Defendants ignore Plaintiff's affidavit stating he did report his injuries.  (Doc. 55, Ex. A at ¶¶ 60, 63).  Regardless, any lack of contemporaneous reporting about the source of his injuries only affects Plaintiff's credibility.

dispositive question is "not the extent of the injury inflicted but whether an officer subjects a detainee to gratuitous violence." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 252 (6th Cir. 2010). "'Gratuitous violence' inflicted upon an incapacitated detainee constitutes an excessive use of force, even when the injuries suffered are not substantial." *Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 407 (6th Cir. 2009).

"If all material facts are undisputed, the reasonableness of officer conduct in an excessive-force claim is a question of law that a court may decide." *Stricker*, 710 F.3d at 364. The issue of qualified immunity may be submitted to a jury only if "the legal question of immunity is completely dependent upon which view of the [disputed] facts is accepted by the jury." *Miller*, 606 F.3d at 247 (alteration in original). Here, the parties present very different versions of events. Accordingly, the Court must determine whether the "evidence produced by plaintiff, taken in the light most favorable to plaintiff but viewed from the perspective of a reasonable officer on the scene, establishes a claim of excessive force in violation of the Constitution. The force must be objectively unreasonable such that it could not have been based on a reasonable mistake of law." *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009).

The three factors this Court should analyze in determining the objective reasonableness of the force are the severity of the crime, whether Plaintiff posed an immediate threat to the safety of the Defendants, and whether Plaintiff actively resisted arrest or attempted to evade arrest by flight. *Harris*, 583 F.3d at 365. Plaintiff concedes that the first factor weighs heavily against his claim. (Doc. 53 at 25). Defendants suspected that Plaintiff had stolen a bulletproof vest and several weapons, including a

machine gun, from the Montgomery County Sheriff's Office.  Based on this alone, a reasonable officer could anticipate that he might encounter a heavily-armed suspect protected by a ballistic vest.

Viewed from the perspective of a reasonable officer, several other undisputed facts indicated a substantial threat to Defendants' safety before they entered the house.  First, it is undisputed that the officers announced their presence over a public address system and ordered the occupants to exit the residence, and that Plaintiff failed to comply or otherwise respond.  (Doc. 55, Ex. A at ¶ 25).  Plaintiff also admits that he placed a recliner behind the front door to barricade the entrance.  (*Id.* at ¶ 24).  The door slammed shut on Defendant Caito when he first attempted to enter the residence, although the parties dispute whether a person or the recliner itself caused the door to slam.  (Doc. 50, Ex. B at ¶ 6; Doc. 55, Ex. A at ¶ 28).  Regardless, it was objectively reasonable for the officers to believe that they were facing active resistance from the occupants of the residence when their first attempt to enter the house was unsuccessful.  The officers had to use force to enter the residence on the second try and realized that the recliner was positioned to barricade the door.  (Doc. 50, Ex. A at ¶ 8, Ex. B at ¶ 7).  After forcing their way into the residence, a reasonable officer could expect to encounter resistance from an unknown number of occupants.

Defendants concede that Plaintiff complied with their order to identify his presence after they entered the house.  (Doc. 50, Ex. A at ¶ 9, Ex. B at ¶ 8).  As they moved towards the bedroom, they used the ballistic shield for cover and could reasonably expect to encounter anything from no resistance to an ambush.  (*Id.*, Ex. A at ¶ 9, Ex. B at

¶ 8).  The uncertainty about whether other persons were in the house remained until after Plaintiff was placed in the cruiser.  (*Id.*, Ex. B at ¶ 10).

Plaintiff contends that he fully complied with all of the officers' orders after they entered the residence and that he did not resist arrest or attempt to pull away.  (Doc. 55, Ex. A at ¶¶ 36-50).  Plaintiff attributes four distinct instances of excessive force to Defendant Bemis and one to Defendant Caito.  The Court must use Plaintiff's version of facts, but the objective reasonableness is judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham*, 490 U.S. at 396.

### A.    Defendant Bemis

Plaintiff alleges that Defendant Bemis used excessive force in handcuffing him, picking him up off the ground, moving him towards the bedroom door, and moving him out the front door.  The Court will examine the first allegation separate from the final three because Plaintiff's handcuffing shifts the calculus of the objectively reasonable analysis.

#### 1.  *Pre-Handcuffing*

Upon arriving at the bedroom, Defendants found Plaintiff lying on the bed and Defendant Bemis ordered him to get on the floor.  (Doc. 50, Ex. A at ¶ 10, Ex. B at ¶ 8; Doc. 55, Ex. A at ¶ 32).  It is undisputed that Plaintiff immediately complied and slid off the bed to lay face-first on the floor.  (Doc. 50, Ex. A at ¶ 10, Ex. B at ¶ 8; Doc. 55, Ex. A at ¶¶ 32-33).

According to Plaintiff:

> Deputy Bemis grabbed my arms and began to put them behind my back, as I had just slid f[ro]m the bed to the floor and used them for support, he yanked them very roughly, and dropped his entire body weight on my head. As he was placing the handcuff on my right wrist, he continued to bounce his body weight on my head. He placed the right hand restraint on me. I felt teeth crack and break during thus force upon my persons. It caused severe pain and discomfort. He then locked his knees around my head and with tremendous force, pulled my left arm toward the right arm (behind my back) and placed the handcuff on both hands.

(Doc. 55, Ex. A at ¶¶ 33-35). Plaintiff provides that he was handcuffed 6-8 seconds after Defendant Bemis entered the bedroom and insists that he did not resist or attempt to pull away. (*Id.* at ¶ 36). However, he also stated that he is "known as a very broad shouldered man, and actually placing my hands behind my back in this quick timeframe, requ[i]red force." (*Id.*)

Adopting Plaintiff's version of events and viewing these actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," *Graham*, 490 U.S. at 396, the Court concludes that Defendant Bemis acted objectively reasonable under the circumstances in using force to apply the handcuffs.[7] Defendant Bemis was attempting to handcuff a person suspected of stealing multiple firearms who barricaded the front door instead of complying with orders to surrender

---

[7] The Court of Appeals has held that "[t]he Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure" and delineated a separate test for this claim. *Morrison*, 583 F.3d at 401. Under this "more defined standard," the plaintiff must present evidence that "(1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced some physical injury resulting from the handcuffing." *Stricker*, 710 F.3d at 364. Despite indicating that this test applies to claims alleging "excessively forceful handcuffing," the elements of the test and cases applying it deal almost exclusively with an officer's failure to loosen handcuffs. Regardless of whether this more defined standard applies, the Court concludes that Defendant Bemis acted objectively reasonable in this particular instance.

peacefully.  Plaintiff was lying on a floor strewn with clothes and drawers on the bottom of the bed were partially open.  (Doc. 55, Ex. A at ¶ 37).  A reasonable officer could suspect that a weapon was within arm's reach while Plaintiff lay on the floor.  Plaintiff was laying on the ground several steps into the bedroom and Defendant Bemis handcuffed him within 6-8 seconds after entering the bedroom, indicating that the force was actually applied for an even shorter amount of time.  (*Id.* at ¶ 36, Ex. 111 at 3).  Plaintiff also admitted that he is "known as a very broad shouldered man, and actually placing my hands behind my back in this quick timeframe, requ[i]red force."  (*Id.*, Ex. A at ¶ 36).  A claim of excessive force during a handcuffing is undercut when a plaintiff's "own statements indicate that the initial force used to restrain him may have been necessary."  *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).

The Court is cognizant that the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Graham*, 490 U.S. at 396-97.  Even if Defendant Bemis "dropped his entire body weight on [Plaintiff's] head" while handcuffing him (Doc. 55, Ex. A at ¶ 33), this occurred over a very few but tense seconds in which he handcuffed a person suspected of stealing police firearms.  Plaintiff does not allege that Defendant Bemis maintained any force on his head after the handcuffing was complete.  It is undisputed that Defendant Bemis was justified in arresting Plaintiff, and "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  *Graham*, 490 U.S. at

396. Even when viewed in the light most favorable to Plaintiff, the Court concludes that Defendant Bemis acted objectively reasonable and did not use "gratuitous violence" in applying the handcuffs. *Miller*, 606 F.3d at 252. Further, he is entitled to qualified immunity for this specific conduct.

### 2. *Post-Handcuffing*

Once Defendant Bemis handcuffed Plaintiff, he conducted a quick pat-down and determined that Plaintiff did not possess any weapons. (Doc. 50, Ex. A at ¶ 13). At this point, the excessive force analysis shifts. Courts closely scrutinize the use of force on a handcuffed suspect because "once the detainee ceases to pose a threat to the safety of the officers or others, the legitimate government interest in the application of significant force dissipates." *Morrison*, 583 F.3d at 404-05. It is "clearly established in this circuit that the gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional." *Harris*, 583 F.3d at 367 (internal quotation marks omitted). Proof of physical injury is not necessary and "a plaintiff may allege use of excessive force even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage." *Ingram v. City of Columbus*, 185 F.3d 579, 597 (6th Cir. 1999). For example, "a slap to the face of a handcuffed suspect— even a verbally unruly suspect—is not a reasonable means of achieving anything more than perhaps further antagonizing or humiliating the suspect." *Pigram ex rel. Pigram v. Chaudoin*, 199 F. App'x 509, 513 (6th Cir. 2006).

Plaintiff alleges three distinct uses of force by Defendant Bemis after his handcuffing. First, Plaintiff asserts that Defendant Bemis "stepped on my left foot, and

grabbed my right thumb, which is handcuffed, and picked my entire body weight up with the thumb.  I heard a loud popping and snapping sound."  (Doc. 55, Ex. A at ¶ 38).[8]  Now on his feet, Plaintiff described the next series of events as follows:

> As I was just violently jerked to my feet, and attempting to regain my balance, there were clothes strewn across the floor, and Deputy Bemis violently grabbed my right arm, which was in a chicken wing stature (hand-cuffed behind the back), and lifted my arm towards the bottom of my neck, against the normal range of motion for a shoulder.  This caused severe jolting pain to my shoulder and upper right back area.  I felt something rip and tear.  Deputy Bemis kept this upward pressure on my right shoulder, and pushed me out of the bedroom.

(Doc. 55, Ex. A at ¶¶ 40-42).[9]

After an intervening use of force by Defendant Caito that is discussed below, Plaintiff claims that Defendant Bemis then "violently shoved and pushed me right into the front door, and slammed me into it head first as I was handcuffed behind the back."  (Doc. 55, Ex. A at ¶ 48).  This caused bleeding and swelling to Plaintiff's nose and mouth, and he was "almost knocked unconsci[ous]."  (*Id.* at ¶¶ 49-50).  Plaintiff and Defendant Bemis agree that Plaintiff said "I can help you guys out" when they were near the front door.  (Doc. 50, Ex. A at ¶ 16; Doc. 55, Ex. A at ¶ 50).  However, Plaintiff claims that Defendant Bemis then "pushed me further into the door hitting my head."  (Doc. 55, Ex. A at ¶ 50).

---

[8] Defendant Bemis' version of events provides only that "I assisted Glowka to his feet.  In doing so, I used a standard technique for assisting handcuffed individuals to their feet that I have been taught in my law enforcement training."  (Doc. 50, Ex. A at ¶ 13).

[9] Defendant Bemis indicated "[w]e took one step toward the bedroom door, with me escorting Glowka, and Glowka attempted to pull away from  me.  Deputy Caito grabbed Glowka by the shirt to assist me in regaining control of Glowka."  (Doc. 50, Ex. A at ¶ 15).

It is clearly established in this circuit that "striking a neutralized suspect who is secured by handcuffs is objectively unreasonable." *Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010); *cf. Cordell v. McKinney*, 759 F.3d 573, 585-86 (6th Cir. 2014). Plaintiff's allegations that Defendant Bemis slammed his head into the door at least once while he was handcuffed behind the back is clearly an objectively unreasonable use of force and is sufficient to overcome qualified immunity, regardless of whether Plaintiff also created a factual dispute about any resulting physical injury. *Stricker*, 710 F.3d at 364. On this basis alone, the Court concludes that Defendant Bemis is not entitled to qualified immunity.

Whether Defendant Bemis used excessive force based on Plaintiff's claims that he "picked my entire body weight up with the thumb" and "lifted my arm towards the bottom of my neck, against the normal range of motion for a shoulder" is a closer call. (Doc. 55, Ex. A at ¶¶ 38, 40). Several courts have addressed claims of excessive force in the context of picking a handcuffed suspect up off the ground. In one case, the plaintiff accused an officer of "pulling the chains of handcuffs secured behind [his] back to hoist his body weight." *Solovy v. Morabito*, 375 F. App'x 521, 527 (6th Cir. 2010). In another case, the officer was accused of "snatch[ing] a suspect by his injured arm (and shoulder) and taking him from a prone to standing position in one motion." *Jones v. Garcia*, 345 F.

App'x 987, 989 (6th Cir. 2009) (alteration in original).[10] In both cases the suspects informed the officer that they had preexisting shoulder injuries and the officers lifted them off the ground in a manner that particularly and unnecessarily affected the injured extremity. *Solovy*, 375 F. App'x at 527; *Jones*, 345 F. App'x at 989-90. The courts concluded that a reasonable jury could find that the officers' actions were objectively unreasonable and amounted to gratuitous violence because of their knowledge of the preexisting injury. *Solovy*, 375 F. App'x at 527; *Jones*, 345 F. App'x at 989-90.

In *Zantello v. Shelby Twp.*, 277 F. App'x 570 (6th Cir. 2008), a suspect who committed a violent felony alleged that officers "'man handled' him and 'twisted' his arms while arresting him." *Id.* at 274. Although the court acknowledged that further factual development at trial could reveal that "the arm twisting was only slight and incidental to the officers' effort to restrain Zantello rather than a gratuitous post-arrest exercise of force," the evidence viewed in the light most favorable to the plaintiff precluded that conclusion on summary judgment. *Id.* Because the plaintiff alleged that the officers "continued to use force even after they had full control of the scene and even after he cooperated with them," factors that could serve to justify the use of force—such

---

[10] The *Jones* court noted that it was a "close call" whether to accept this version of events as true. *Jones*, 345 F. App'x at 989. Ultimately, it was sufficient that "Jones' account that he was 'snatched' from prone to standing by the arm connected to his bad shoulder in one fell and mean-spirited swoop is not factually implausible." *Id.* at 989. The court reasoned that although "[t]he officers may be right that most jurors (and most lawyers) will pause over the physics, or at least likelihood, of Jones' account of the incident. But Jones' account does not require such a suspension of reality that no reasonable juror could accept it, and that is enough to allow a jury to hear the claim." *Id.* at 989-90. Here, Plaintiff's claim that Defendant Bemis picked him up by only his right thumb is similarly a close call, but not factually implausible. In reaching this conclusion, the Court notes that Defendants' offered no argument to the contrary.

as the violent nature of the crime and the reasonable fear that he posed an immediate safety threat—all but vanished.  *Id.*

Here, it is undisputed that Plaintiff was handcuffed behind the back and Defendant Bemis had confirmed that he was unarmed.  (Doc. 50, Ex. A at ¶13).  Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could conclude that Defendant Bemis acted objectively unreasonable in pulling a handcuffed suspect off the ground by only his thumb and then forcing his shoulder against the normal range of motion, which occurred in rapid succession.  Defendant Bemis was positioned behind Plaintiff grasping his arms, Defendant Caito was a few steps away near the bedroom door with his weapon drawn, and two other officers were behind him.  (*Id.* at ¶ 15, Ex. B at ¶ 9).  Plaintiff contends that he did not resist or attempt to pull away.  (Doc. 55, Ex. A at ¶ 36).

Notwithstanding that Plaintiff did not have a preexisting injury that was intentionally targeted, a reasonable jury could conclude that the application of significant force isolated on a particular joint of a handcuffed suspect serves no purpose other than to inflict injury or pain.  Or, as in *Zantello*, a reasonable jury could very well conclude that the force was "only slight and incidental to the officers' effort to restrain [Plaintiff] rather than a gratuitous post-arrest exercise of force."  *Zantello*, 277 F. App'x at 274.  However, that determination largely turns on which version of events is accepted as true.  On summary judgment, the Court can only accept Plaintiff's version.

Although Plaintiff does not need to demonstrate a physical injury, objective medical evidence in the record provides that Plaintiff had surgery in September 2012 to repair a radial collateral ligament tear in his right thumb.  (Doc. 55, Exs. 102, 103).

Defendants point to the lack of contemporaneous evidence corroborating Plaintiff's claim that he immediately sought medical treatment for his injuries and identified Defendants as the source. However, Plaintiff testified that he immediately reported his injuries to other officers and the medic on the scene, and to Montgomery County Jail staff. (*Id.*, Ex A at ¶¶ 52, 55, 57, 60). [11]

Plaintiff was transferred to the Butler County Jail about one month after his arrest and was able to produce significant records documenting his medical requests after his transfer. (*Id.* at ¶ 62, Exs. N-R, Z, 101-106). In particular, a medical request on February 29, notations on his inmate medical record on March 16, and doctor's notes from July 17, 2012 indicate that Plaintiff reported he suffered his thumb and shoulder injuries during the arrest. (*Id.*, Exs. N, P, R). A radiology report interpreting Plaintiff's March 2012 x-ray states that "[t]he findings are unchanged from 1/11/2012," corroborating Plaintiff's claim that he did report his injuries to the Montgomery County Jail medical staff. (*Id.*, Exs. O, R at 1). There is also evidence of a shoulder injury, although the ultimate diagnosis is unclear. (*Id.*, Exs. A at ¶ 71, N, R, Y, Z).

Based on the foregoing, the Court concludes that Defendant Bemis is not entitled to qualified immunity.

### B. Defendant Caito

Defendant Caito approached Plaintiff as he reached the doorway to the bedroom, holstered his weapon, and said "you piece of shit, you made us miss Christmas Eve and

---

[11] Curiously, Plaintiff was unable to obtain his medical records from the Montgomery County Jail for use in a civil lawsuit against Montgomery County sheriff deputies. At that time, Plaintiff was incarcerated for stealing property from the Montgomery County Sheriff's Office.

Christmas Day with our families." (Doc. 55, Ex. A at ¶ 43).[12] Plaintiff asserts that Defendant Caito then "punched me three times in my mouth area on the left side of my face." (*Id.* at ¶ 44).[13] Plaintiff felt additional teeth crack and break, with one piece of tooth falling out of his mouth, and he also felt blood in his mouth. (*Id.* at ¶¶ 46-47).

Defendants argue that the photographs of Plaintiff taken shortly after his arrest provide objective evidence that they did not use excessive force. (Doc. 55, Exs. T, U, V, W). They also assert that he refused medical treatment from a medic. Again, Plaintiff's affidavit provides evidence that he did report his injuries to the medic and requested treatment. (*Id.*, Ex. A at ¶ 55).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, objective evidence in the record that is challenged as incomplete or inaccurate cannot "blatantly contradict" a party's version of events. *Coble v. City of White House*, 634 F.3d 865, 869-70 (6th Cir. 2011) (holding that the plaintiff's testimony that he screamed "is not 'blatantly contradicted' by the lack of corroborating sound on [an] audio recording").

---

[12] Plaintiff correctly states that "in assessing the credibility of an officer's account of the circumstances that prompted the use of force, a fact finder may consider, along with other factors, evidence that the officer may have harbored ill-will toward the citizen." *Graham*, 490 U.S. at 396 n.12. However, the Court in ruling on a motion for summary judgment may not.

[13] The Defendants assert that Defendant Caito merely grabbed Plaintiff by the shirt. (Doc. 50, Ex. A at ¶ 15; *id.*, Ex. B at ¶ 9).

The black-and-white photographs of Plaintiff do not show fresh blood.  (Doc. 55, Exs. T, U, V, W).  However, Plaintiff stated that his face was covered in blood and that the officers ordered the medic to clean off his face immediately before the photographs were taken.  (*id.*, Ex. A at ¶ 55).  Plaintiff's testimony is not "blatantly contradicted" or "utterly discredited" by the photographs such that no reasonable jury could believe him. *Scott*, 550 U.S. at 380.

As stated by the Court of Appeals nine years ago, "we have also held for more than twenty years that it is clearly established in this circuit that 'a totally gratuitous blow' to a suspect who is handcuffed and offering no resistance violates the Fourth Amendment."  *Bultema v. Benzie Cnty.*, 146 F. App'x 28, 37 (6th Cir. 2005) (quoting *McDowell v. Rogers*, 863 F.3d 1302, 1307 (6th Cir. 1988)).  Based on Plaintiff's affidavit, that is what occurred here – notwithstanding Defendants' denials.  Accordingly, the Court concludes that Defendant Caito is not entitled to qualified immunity.

## VI.   CONCLUSION

For these reasons, Defendants' Motion for Summary Judgment (Doc. 50) is **DENIED** and Plaintiff's Motion to Object to and/or Strike the Defendants' Affidavits (Doc. 55) is **GRANTED IN PART** as to paragraph 8 of the Williams affidavit.  The evidence viewed in the light most favorable to Plaintiff creates a triable issue of fact over whether Defendants Bemis and Caito used excessive force.  In light of clearly established precedent, a reasonable officer would know that punching a handcuffed and non-resisting suspect in the face and slamming his head into a door violated Plaintiff's constitutional

rights.  It is for a jury, not the Court on summary judgment, to resolve the competing factual allegations.

       **IT IS SO ORDERED**.

Date:  2/18/2015                                   */s/ Timothy S. Black*     
                                                     Timothy S. Black
                                                     United States District Judge