UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ADAM M. GLOWKA, | : | Case No. 3:12-cv-345 |
| Plaintiff, | : | **Judge Timothy S. Black** |
| vs. | : | |
| DEPUTY GERALD H. BEMIS, *et al.*, | : | |
| Defendants. | : | |

**ORDER:**
**(1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S *MONELL* CLAIM (Doc. 112); AND**
**(2) DENYING AS MOOT DEFENDANTS' MOTION TO BIFURCATE (Doc. 113)**

This civil action is before the Court on Defendants' Motion for Summary Judgment on Plaintiff's *Monell* Claim (Doc. 112) and Motion to Bifurcate (Doc. 113), Plaintiff's memoranda *contra* (Docs. 120 & 118), and Defendants' reply memoranda (Docs. 122 & 123).

**I. BACKGROUND**

On October 17, 2012, Plaintiff Adam M. Glowka brought this civil action under 42 U.S.C. § 1983 against Montgomery County Sheriff's Deputies Gerald H. Bemis ("Deputy Bemis") and Joseph P. Caito, III ("Deputy Caito," collectively, "Defendants").[1] (Doc. 3).  Plaintiff alleged that on December 31, 2011, Defendants used excessive force while placing him under arrest, resulting in various physical injuries.  (*Id.*)  With leave from the Court, Plaintiff subsequently filed a First Amended Complaint ("FAC")

---

[1] Plaintiff's claims against a third defendant were previously dismissed.  (Doc. 15).

asserting two causes of action, including use of excessive force, as well as assault and battery. (Doc. 77, ¶¶ 53-56).

Additionally, the FAC contains allegations that Defendants' employer, Montgomery County, through the Montgomery County Sheriff's Office (the "MCSO"), effectuated "policies, practices, customs and usages regarding the use of force against restrained and handcuffed persons [which] proximately caused [Plaintiff's] injuries," and that the MCSO "fail[ed] to train its officers adequately in the appropriate use of force," and further "ratified [Defendants'] excessive use of force."[2] (Doc. 77, ¶¶ 49-51). These allegations directed at the MCSO comprise the *Monell* claims currently at issue.

Defendants move for summary judgment on the *Monell* claims, and, in the event that any survive, move for bifurcation of any *Monell* claims from Plaintiff's underlying excessive force claims against the individual defendants. (Docs. 112, 113).

As a threshold matter, Defendants vigorously dispute on the merits that any constitutional violation occurred and, accordingly, argue that any *Monell* claim must fail as a matter of law.[3] (Doc. 112 at 3).[4]

---

[2] Plaintiff did not name Montgomery County as a party in the instant case, but, instead, brought this action against Deputies Bemis and Caito in their individual and official capacities. The Court clarifies that any references to the MCSO in this Order are made merely to identify the specific Montgomery County department or 'sub-unit' (*i.e.*, the Sheriff's Office) involved in the issues presented in this case, and should not be read as an indication or implication of the proper party defendants.

[3] Defendants acknowledge that the Court denied their first motion for summary judgment as to the excessive force allegations. (Doc. 65). Subsequently, the Court appointed counsel for Plaintiff (who proceeded *pro se* until that time) and reopened limited discovery. Further, the Court denied Defendants leave to file a second motion for summary judgment on the excessive force claims. (Min. Entry & Not. Order, Aug. 25, 2015).

Beyond this overarching position, Defendants contend that there is no factual or legal support for a *Monell* claim in this case, largely in light of the undisputed evidence that the MCSO has, at all relevant times, maintained a thorough and ongoing training program to instruct on the proper use of force and to target and combat issues of excessive force, and has maintained comprehensive policies and procedures to investigate occurrences of use of force and discipline inappropriate conduct. (Doc. 112 at 3). Further, Defendants argue that no policy, procedure, or training program of the MCSO was the "moving force" behind any alleged constitutional violation in this case. (*Id.*)

## II. UNDISPUTED FACTS[5]

### A. MCSO Training on Use of Force

1. Both Defendants testified they received and continue to receive annual training from the MCSO that includes use of force and use of force policy.

2. The MCSO conducts yearly ongoing training for its Deputies.

3. Training on handcuffing is administered every other year.

4. The training on handcuffing included how to assist handcuffed subjects up when they are handcuffed face down on their stomach.

5. Training on filling out use of force reports is administered every year by the MCSO.

---

[4] *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (*per curiam*) ("[N]either *Monell* … nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact … the officer inflicted no constitutional harm. If a person has suffered no constitutional injury … the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point") (emphasis in original).

[5] The sources in the record for these findings of undisputed fact are cited in Defendants' motion. (Doc. 112 at 4-8).

6. The MCSO operates and maintains a Training Center on its premises that is utilized in its ongoing training of Deputies.

7. The MCSO brings in guest speakers and other instructors, to administer certain training as part of its ongoing training of Deputies.

8. The MCSO trains its Deputies to only use force consistent with the MCSO use of force policy, which is the "use of force" continuum that is utilized by law enforcement agencies throughout Ohio.

9. Remedial training is provided in certain instances by the MCSO to Deputies who are administratively found to have violated MCSO policies and procedures. Violations of MCSO use of force policy can result in consequences, including but not limited to, remedial training for Deputies.

### B. The MCSO Policies and Procedures

1. The MCSO is accredited by the Commission on Accreditation for Law Enforcement Agencies ("CALEA") and utilizes CALEA endorsed policies and procedures.

2. The MCSO's use of force policy is set forth at Section 1.1.3 of the Montgomery County General Orders Manual, and it directs that "an employee making an arrest may only use such force, as he believes is reasonable, to (1) detain an offender, make the arrest, and sustain the detention, (2) overcome resistance, (3) prevent escape or recapture after escape, and (4) protect himself or others."

3. The MCSO's use of force policy also adopts and incorporates the Action-Response Use of Force Continuum.

4. The MCSO's use of force policy sets forth a requirement for employees to fill out a use of force report.

5. The MCSO's use of force policy sets forth the procedure for internal review of the completed use of force reports, including the review by the immediate supervisor, the Chief Deputy subsequent review of the reports, and any comments or concerns from the supervisor, followed by, when appropriate, subsequent investigation by the Inspectional Services Unit ("ISU").

   When a use of force occurs, it is reported on a Use of Force Report. The immediate supervisor receives the Use of Force Report and immediately collects all evidence related to the event, including available cruiser or other available video. All evidence related to the event is reviewed by the immediate supervisor. Then, the immediate supervisor provides all evidence surrounding the use of force

to the District Commander (Captain). The District Commander will forward the use of force report, together with all evidence and comments, to the Division Commander (Major), who will in turn forward the report and evidence to the Chief Deputy, who undertakes an additional review of the event. And, the two ranking supervisors discuss the event as warranted. If either or both are of the opinion that a policy violation occurred in the event, the matter is turned over to the Internal Services Unit for further investigation. When the internal investigation is complete, the Chief Deputy reviews ISU's report, commonly referenced as an IA report (internal affairs), and then forwards the report to the Sheriff for final review. This procedure follows the chain of command within the MCSO.

During the ISU investigations, Deputies subject to investigation may or may not be placed on administrative leave for the protection of the Deputy and the public. Following the Sheriff's final review of the IA report, discipline proceedings may be initiated in compliance with due process and collective bargaining procedures, if warranted.

6. The process outlined above is used to decide whether discipline is appropriate for any particular incident, as well as whether any remedial or additional training is necessary for the Deputy under review; and to decide whether re-evaluation and/or modification of the MCSO training, policies, or equipment is necessary for the Office and all of its personnel operating under its policies.

7. The MCSO also tracks and analyzes the use of force by individual deputy on a quarterly basis24 for purposes of monitoring the efficacy of its training, as it maintains and operates its own training center. The MCSO's dedication to maintaining and exceeding the highest of standards is evidenced by the fact that the quarterly tracking is not required by CALEA nationally recognized standards. The MCSO's policy of conducting quarterly use of force reviews for purposes of evaluating training of its Deputies exceeds CALEA standards. The purpose of this tracking is to monitor and identify trends relating to uses of force within the MCSO in order to determine whether additional training and/or policy re-evaluation and/or modification are necessary. This safeguard is in place in addition to the process outlined above in Paragraph 5, which provides for administrative review of every use of force immediately following the use of force, including review for failure to report use of force, and in addition to the process outlined below in Paragraph 8, which provides for annual tracking and analysis of use of force.

8. The MCSO also tracks and analyzes use of force for the Office on an annual basis. This annual tracking is performed in compliance with the recognized CALEA national standards. The purpose of this tracking is to monitor and identify trends relating to uses of force within the MCSO, and to determine whether additional

5

training and/or policy re-evaluation and/or modification are necessary. The analysis undertaken to prepare the Annual Reports is conducted by supervisor of the ISU. In the recent past, the Annual Report process identified that the Office could benefit from additional hands on training in the area of handcuffing. The Office invested some of its limited resources in purchasing two handcuffing mannequins, and engaged in office-wide training on handcuffing technique to carry out its mission of protecting suspects, the public at large, and its law enforcement officers while they serve and protect the citizens of Montgomery County.

<u>Plaintiff does not dispute any of these facts</u>.[6] Rather, Plaintiff argues that "[h]owever exemplary these training and supervision programs might appear on paper, in *practice* the MCSO has failed to adequately discipline and re-train [Deputy Caito], despite knowing that [he] has committed multiple use of force policy violations." (Doc. 120 at 1). According to Plaintiff, "[t]hese failures confirm that there is an issue of material fact with respect to Plaintiff's *Monell* claim." (*Id.*)

Notably, the only *Monell* claims that Plaintiff articulates and now appears to be pursuing is directed at the MCSO's approach to Deputy Caito: to wit, the MCSO failed to adequately discipline and re-train Deputy Caito, despite knowing that he had committed multiple use of force policy violations in the past. (Doc. 120). Essentially, Plaintiff asserts that the fact that Deputy Caito was disciplined for using force in the past, and is now again alleged to have used excessive force here, calls into question the sufficiency of the entire MCSO disciplinary and training program, and that such failure amounts to deliberate indifference.

---

[6] Plaintiff failed to admit or deny any of Defendants' proposed "Undisputed Facts," and, therefore, the facts set forth in Defendants' motion (Doc. 112 at 4-8) are deemed admitted. *See also,* Standing Order Governing Civil Motions for Summary Judgment at (A)(1), available at: http://www.ohsd.uscourts.gov/FPBlack.

### III.  STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be construed in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but … must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248 (1986).

### IV.  ANALYSIS

To succeed on a claim for relief under 42 U.S.C. § 1983 against a local governing body, a plaintiff must prove that his "constitutional rights were violated and that a policy or custom of the municipality was the moving force behind the deprivation of the plaintiff's rights."  *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254-55 (6th Cir. 2010); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692-94 (1978).  Thus, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Id.* at 694.  Nor does § 1983 permit a plaintiff to sue a government entity on

the theory of *respondeat superior*. *Gregory v. City of Louisville*, 444 F.3d 725, 752-53 (6th Cir. 2006). "A plaintiff may only hold a local government entity liable under Section 1983 for the entity's own wrongdoing [which occurs when …] its official policy or custom actually serves to deprive an individual of his or her constitutional rights." *Id.* A government entities policy or custom can be unconstitutional in two ways: (1) it can be facially unconstitutional as written or articulated (*i.e.*, the policy itself is illegal); or (2) it can be "facially constitutional but consistently implemented to result in constitutional violations with explicit or implicit ratification by city policymakers," (*i.e.*, a custom of implementing a constitutional policy in an unconstitutional manner). *Id.*

There are four types of *Monell* claims under which a plaintiff may prove the existence of a government entity's illegal policy or custom: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). However, in order for the government entity to be held liable, the policy or custom at issue must have been the "moving force" behind the constitutional violation. *Monell*, 436 U.S. at 694. In other words, the 'policy or custom' must be sufficiently 'at fault' for the violation before liability will attach. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) ("municipal liability under § 1983 attaches where—and **only where**—**a deliberate** choice to follow a course of action **is made** from among various alternatives…") (emphasis added).

### A. Failure to Train and Supervise

In the FAC, Plaintiff asserts that the MCSO's "policies, practices, customs and usages regarding the use of force against restrained and handcuffed persons proximately caused [Plaintiff's] injuries," and that the MCSO "fail[ed] to train its officers adequately in the appropriate use of force." (Doc. 77, ¶¶ 49-50). However, Defendants argue that the undisputed facts support a finding that the MCSO's policies, practices, and customs were not only adequate, but even exceeded national standards.

To succeed on a claim for failure to supervise or train, the plaintiff must evidence that: (1) the training or supervision was inadequate for the tasks the officer or employee was performing; (2) the inadequate training resulted from the defendants' deliberate indifference; and (3) the inadequacy was closely related to, or directly caused, the injury. *Ellis v. Cleveland Municipal School Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). "**Only** where a municipality's failure to train its employees in a relevant respect evidences a **'deliberate indifference'** to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (emphasis added); *Gregory*, 444 F.3d at 753. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Com'rs. of Bryan County, Okl. v. Brown*, 520 U.S. 397, 410 (1997).

> To establish deliberate indifference, a plaintiff must demonstrate either that a municipality or local government (1) failed to provide adequate training [or supervision] in light of foreseeable consequences that could result from the lack of instruction [or supervision]; or (2) failed to act in response to repeated complaints of constitutional violations by its officers.

9

*Rodriguez v. City of Cleveland*, 619 F. Supp. 2d 461, 482 (N.D. Ohio 2009); *see also Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999).

It is insufficient for a plaintiff to allege merely that an officer's training and supervision were inadequate, or that the officer would not have violated the plaintiff's constitutional rights had he or she been given more or better training and supervision. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998). Indeed, where "the constitutional violation was not alleged to be part of a pattern of past misconduct, a supervisory official or a municipality may be held liable only where there is **essentially a complete failure to train** the police force, **or training that is so reckless or grossly negligent that future police misconduct is almost inevitable** or would properly be characterized as substantially certain to result." *Hays v. Jefferson County, Ky*., 668 F.2d 869, 874 (6th Cir. 1982) (internal citations omitted) (emphasis added).

Here, Plaintiff has failed to evidence that any training or supervision was deficient or inadequate, and, further, has failed to evidence deliberate indifference. Conversely, the detailed, regularly-scheduled, and ongoing training provided by Montgomery County, through the MCSO, is undisputed. Moreover, the MCSO's program of training and oversight, which is CALEA-approved, and meets, and at times even exceeds, national standards, is thoroughly documented in Montgomery County's policies and procedures. In short, the MCSO's use of force reporting and investigation system, as well as its use of force trend monitoring and targeted training programs, evidences neither failure to train and supervise, nor deliberate indifference toward the safety of the community.

Additionally, Plaintiff's attempt to characterize Deputy Caito's three disciplinary incidents as 'use of force violations' is disingenuous.[7]  Indeed, two of the incidents were administrative policy violations (albeit related to sufficiently documenting use of force or interaction with arrestees), and the third was, at least in part, similarly administrative. Simply stated, Deputy Caito's conduct, as evidenced in the record, does not constitute <u>repeated constitutional</u> violations such that, absent re-training, future misconduct was inevitable.

### B. Failure to Discipline

Additionally, Plaintiff asserts in his FAC that the MCSO ratified Defendant's use of excessive force.  (Doc. 77, ¶ 51).  Defendants argue that neither the MCSO, nor any supervisory official, ratified or condoned misconduct from any employee.

Failure to investigate complaints or discipline officers can give rise to § 1983 liability.  *See, e.g., Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1247 (6th Cir. 1989). "The theory underlying these cases is that the municipality's failure to investigate or discipline amounts to a 'ratification' of the officer's conduct."  *Dyer v. Casey*, 72 F.3d 129 (Table) (6th Cir. 1995) (*per curiam*).

Here, the record evidence shows that the MCSO implemented strict investigative and disciplinary procedures regarding use of force incidents.  Indeed, prior disciplinary

---

[7] Deputy Caito's three disciplinary incidents include: (1) issuance of a "letter of caution" resulting from failure to complete a 'use of force report' in December 2006; (2) issuance of a "letter of reprimand" in March 2010 for improper conduct resulting from use of excessive force, as well as remedial training in report writing, as Deputy Caito's report failed to adequately explain that his use of force was driven by his perception of the incident, and thus, appeared inconsistent with the cruiser video of the incident; and (3) warning for turning off his body microphone in November 2013.  (Doc. 120 at 2-8).

11

actions evidence that MCSO is vigilant about investigating and disciplining misconduct. Additionally, the undisputed record evidence shows Deputy Caito received annual use of force training.  The fact that Defendant Caito has not been the subject of disciplinary action related to the use of excessive force since the one 2010 incident (but for the allegations in this case) evidences that the prior disciplinary action taken and annual re-training program was sufficient, indeed, effective – regardless of Plaintiff's subjective opinion to the contrary.

### C.  Plaintiff Has Not Evidenced That Any MCSO Policy Was the "Moving Force" Behind Plaintiff's Alleged Constitutional Violation

For Plaintiff to present a viable *Monell* claim, he must identify a specific policy or custom that was the "moving force" behind Plaintiff's alleged constitutional violation. *Sexton v. Kenton County Det. Ctr.*, 702 F.Supp.2d 784, 790 (E.D. Ky. 2010) (citing *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)).  To constitute a "moving force," the policy or custom must be closely related to the plaintiff's ultimate injury.  *City of Canton*, 489 U.S. at 391.  "[P]roof merely that such a policy or custom was 'likely' to cause a particular violation is not sufficient; there must be proven at least an 'affirmative link' between policy or custom and violation; in tort principle terms, the causal connection must be 'proximate,' not merely 'but-for' causation-in-fact." *Mann v. Helmig*, 289 F. App'x 845, 850 (6th Cir. 2008) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1388 (4th Cir. 1987)); s*ee also, Sexton*, 707 F.Supp.2d at 790.  To satisfy the *Monell* requirements a plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that

policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)); *see Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994).

Here, apart from voicing dissatisfaction with the course of disciplinary action taken against Deputy Caito for his prior use of force violation, Plaintiff fails to identify definitively any <u>MCSO policy or custom</u> that was the "moving force," or proximately caused his alleged injury and constitutional violation.

Further, as previously stated, the undisputed facts evidence that the MCSO, a CALEA-accredited department, had thorough policies and procedures in place to strictly govern the use of force. Additionally, where the MCSO's lengthy investigative process determined that excessive force was used, there were disciplinary procedures and training programs for the offending deputy, and further training for the entire department if the underlying conduct presented a particular concern or trend. Accordingly, the assertion that the Montgomery County policies or procedures were the 'moving force' behind Plaintiff's alleged constitutional violations or claimed injuries is unsupported by the uncontroverted record evidence.

## IV. CONCLUSION

In sum, there are no genuine issues as to any of the material facts relating to Montgomery County's policies, procedures, and training. The MCSO is an accredited department that utilizes CALEA-approved policies and procedures. Montgomery County has ongoing and in-depth annual training for its deputies, under which Deputy Bemis and Deputy Caito have received and continue to receive appropriate training. Further, the

MCSO engages in thorough investigative and disciplinary actions in all situations resulting in use of force.  Accordingly, Montgomery County's policies, procedures, customs, and practices regarding use of force training, supervision, and discipline are entirely appropriate as written and as implemented by the MCSO.  As there are no factual disputes for a jury to resolve with respect to any *Monell* claim, and, as Defendants are entitled to judgment as a matter of law, summary judgment is warranted.

Accordingly, based upon the foregoing, Defendants' Motion for Summary Judgment on Plaintiff's *Monell* Claim (Doc. 112) is **GRANTED.**  Moreover, given that no *Monell* claim will proceed to trial, the thrust of Defendants' Motion to Bifurcate (Doc. 113) is satisfied, and it is therefore terminated as moot.[8]

---

[8] A court may bifurcate a trial "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy."  Fed. R. Civ. P. 42(b); *Martin v. Heideman*, 106 F.3d 1308, 1311 (6th Cir. 1997) (the court should consider "potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy").

Here, had any of the *Monell* claims survived summary judgment, this Court would have granted Defendants' motion to bifurcate, as the claims present entirely separate issues involving distinct evidence, and prejudice to Defendants would significantly outweigh the interests of judicial economy.  Further, this Court finds Judge Walter H. Rice's observations and holding in *Wells v. City of Dayton*, 495 F.Supp.2d 793, 795 (S.D. Ohio 2006), granting bifurcation of *Monell* claims from § 1983 claims against individual police officers, to be instructive and applicable here:

> The questions regarding the liability of those individual [police officers] must be decided by the jury only on the facts of the particular encounter on which this case is based. That is to say, **these individual Defendants cannot be made to bear the burden of answering for all of the alleged misdeeds of every past and current Dayton police officer, when defending against the allegations of the Plaintiffs as to the incidents that occurred in this case.**  A jury must be allowed to consider the evidence regarding this incident, with its focus on that evidence, **unimpaired by a torrent of information concerning the conduct of police officers in other unrelated situations at other times, evidence that has relevance only to the Plaintiffs' claims of *Monell* liability against Dayton**. (Emphasis added).

The Court anticipates so ruling on any prospective motion *in limine*.

14

**IT IS SO ORDERED**.

Date:  12/14/15                                                                                    *s/ Timothy S. Black*
                                                                                                                Timothy S. Black
                                                                                                                United States District Judge